# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2024

Lyle W. Cayce
Clerk

No. 24-20088

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ENRIQUE MORALES,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-305-1

Before ELROD, *Chief Judge*, and HIGGINBOTHAM and SOUTHWICK, *Circuit Judges*.

JENNIFER WALKER ELROD, *Chief Judge*:

Enrique Morales was sentenced to 188 months in prison for conspiracy to operate an illegal money-transmitting business and conspiracy to launder funds. He filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) based on the new zero-point-offender provision of the United States Sentencing Guidelines. The district court denied the motion, reasoning that Morales could not meet all of the provision's criteria. We agree. Because Morales received an aggravating-role adjustment, he is ineligible for the reduction even though he did not engage in a continuing

criminal enterprise. Accordingly, the district court's judgment is AFFIRMED.

I

In 2013, Morales pleaded guilty to one count of conspiracy to operate an illegal money-transmitting business and one count of conspiracy to launder funds. The presentence report calculated a total offense level of 41. That offense level included a four-level enhancement under USSG § 3B1.1(a) because Morales was "deemed an organizer/leader of criminal activity that involved five or more participants or was otherwise extensive." Morales had no criminal history points, so his criminal history category was I. His resulting guideline range was 324 to 405 months of imprisonment. Due to the combined statutory maximum, the guideline range then became 300 months. The government recommended a downward departure under USSG § 5K1.1 due to Morales's substantial assistance in the prosecution of the case.

At the sentencing hearing, the district court adopted the presentence report and granted the government's motion for a downward departure. The district court sentenced Morales to 60 months as to count 1 and 128 months as to count 2. The sentences were run consecutively, for a total of 188 months of imprisonment. The district court also imposed a term of supervised release of three years as to each count, to run concurrently with each other, and ordered forfeiture in the amount of the laundered funds.

After Morales's sentencing, Amendment 821 to the Sentencing Guidelines added a new guideline, USSG § 4C1.1. USSG Supp. to App. C, Amendment 821, Part B, Subpart 1, at 236–37 (Nov. 2023). That guideline provides a decrease in offense level for certain "zero-point offenders":

(a) Adjustment.—If the defendant meets all of the following criteria:

(1)  the defendant did not receive any criminal history points from Chapter Four, Part A;

(2)  the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3)  the defendant did not use violence or credible threats of violence in connection with the offense;

(4)  the offense did not result in death or serious bodily injury;

(5)  the instant offense of conviction is not a sex offense;

(6)  the defendant did not personally cause substantial financial hardship;

(7)  the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)  the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9)  the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by **2** levels.

USSG § 4C1.1 (Nov. 2023). Section 4C1.1 was made retroactively applicable, so it can be the basis for a motion to reduce a defendant's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). USSG § 1B1.10; USSG Supp. to App. C, Amendment 825, at 260–61.

In December 2023, after Amendment 821 became effective,[1] Morales filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). He argued that, because he was a zero-point offender eligible for a two-level decrease in his offense level under § 4C1.1, his guideline range should be 262 to 327 months. *See* USSG § 4C1.1. Then, with a comparable downward departure under § 5K1.1, he asserted that his sentence should be 175 months. *See* USSG § 1B1.10(b)(2)(B).

The district court denied the motion. It reasoned that § 4C1.1 "applies only to those who 'did not receive an adjustment under 3B1.1 (Aggravating Role) . . . .'" (alteration in original) (quoting USSG § 4C1.1(a)(10)). Because Morales "did receive a 3B1.1(a) enhancement," the district court concluded that he was ineligible for a reduction under the new guideline. This appeal followed.

## II

We review a district court's decision whether to reduce a sentence for abuse of discretion. *United States v. Calton*, 900 F.3d 706, 710 (5th Cir. 2018). However, "a district court's conclusion that it could not reduce a sentence based on an interpretation or application of the Guidelines is reviewed *de novo*." *Id.* When reviewing an interpretation of the Guidelines, we "apply[] ordinary rules of statutory construction." *United States v. Contreras*, 820 F.3d 773, 774 n.1 (5th Cir. 2016) (quoting *United States v. Moore*, 733 F.3d 161, 162 (5th Cir. 2013)).

---

[1] Amendment 821 became effective on November 1, 2023. USSG Supp. to App. C, Amendment 821, at 244. A court's order reducing a term of imprisonment based on the retroactive portions of the amendment must have an effective date of February 1, 2024, or later. USSG § 1B1.10(e)(2). Here, the district court denied Morales's § 3582(c)(2) motion on February 15, 2024.

III

To receive the zero-point-offender reduction under § 4C1.1, a defendant must "meet[] all of [that provision's] criteria," including that "the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." USSG § 4C1.1(a)(10). Morales contends that he is only disqualified under that subsection if he *both* (1) received a § 3B1.1 adjustment *and* (2) engaged in a continuing criminal enterprise. The government asserts that *either* receiving a § 3B1.1 adjustment *or* engaging in a continuing criminal enterprise is sufficient to disqualify a defendant. We agree with the government.

A

We have previously rejected Morales's interpretation of the guideline, albeit in an unpublished opinion. *United States v. Rivera-Paredes*, No. 24-40082, 2024 WL 3051671, at *1 (5th Cir. June 19, 2024) (unpublished). There, the defendant sought to proceed *in forma pauperis* on appeal from the denial of his § 3582(c)(2) motions, which were based in part on Amendment 821. *Id.* The defendant, like Morales, had received a § 3B1.1 enhancement. *Id.* We observed that "the plain language of § 4C1.1(a) . . . requires that a defendant satisfy 'all' of the criteria listed in § 4C1.1(a)(1)–(10), including that he did not receive a U.S.S.G. § 3B1.1 adjustment *and* that he did not engage in a continuing criminal enterprise." *Id.* (quoting USSG § 4C1.1(a)(10)) (citing *United States v. Cortez-Gonzalez*, 929 F.3d 200, 203 (5th Cir. 2019)). Accordingly, we determined that the defendant's "appellate argument that he qualified for the two-level reduction" was frivolous. *Id.*

Three other circuits have also concluded that a § 3B1.1 enhancement is sufficient by itself to disqualify a defendant.[2]  *See, e.g.*, *United States v. Cervantes*, 109 F.4th 944, 946 (7th Cir. 2024); *United States v. Milchin*, No. 24-1484, 2024 WL 4441419, at *2 (3d Cir. Oct. 8, 2024) (unpublished);[3] *United States v. Shaw*, No. 24-6638, 2024 WL 4824237, at *1 (4th Cir. Nov. 19, 2024) (unpublished).[4]  In *United States v. Cervantes*, the Seventh Circuit reasoned that "where the word 'and' conjoins several negative phrases, each negative phrase is a separate requirement."  109 F.4th at 946 (citing *United States v. Draheim*, 958 F.3d 651, 657–58 (7th Cir. 2020)).  It also noted that

---

[2] The issue was also raised before the Sixth Circuit in *United States v. Pearce*, No. 23-6079, 2024 WL 3458085 (6th Cir. July 18, 2024).  There, the district court concluded that receiving a § 3B1.1 enhancement disqualified the defendant from receiving the zero-point-offender reduction under § 4C1.1(a)(10).  *Id.* at *8.  Because the defendant had invited the alleged error in the district court's interpretation, the Sixth Circuit reviewed for plain error, stated that both interpretations were "plausible," and held that the district court did not plainly err.  *Id.* at *8–9.

[3] The Third Circuit noted that "both conjunctive and disjunctive readings of § 4C1.1(a)(10) are 'grammatically permissible' in the abstract."  *Milchin*, 2024 WL 4441419, at *2 (quoting *Pulsifer v. United States*, 601 U.S. 124, 133 (2024)).  The court then looked to the context of subsection (10) and determined that the conjunctive reading (*i.e.*, that a defendant is only disqualified if he *both* received a § 3B1.1 enhancement *and* was engaged in a continuing criminal enterprise) would render the subsection superfluous "because it is impossible for a defendant to have both received an aggravating role adjustment and to have been found engaged in a continuing criminal enterprise in the same case."  *See id.* at *2–3.

The government raises the superfluity argument here as well.  Although we need not reach that issue because we find that the text is sufficiently clear, we agree that Morales's interpretation would render § 4C1.1(a)(10) superfluous in at least some cases.  A defendant convicted of a continuing criminal enterprise under 21 U.S.C. § 848 and sentenced under the guideline for that provision would never receive a § 3B1.1 adjustment and thus would never be disqualified under § 4C1.1(a)(10).  *See* USSG § 2D1.5, comment. (n.1).

[4] The Fourth Circuit reviewed a district court's conclusion that the defendant did not meet the criteria in § 4C1.1(a) because he received a § 3B1.1 adjustment and "f[ound] no reversible error."  *Shaw*, 2024 WL 4824237, at *1.

§ 4C1.1(a)(10) "is phrased 'in terms of what the defendant must show *was not* true of him,' rather than being phrased 'in terms of what the government would have to prove *was* true.'" *Id.* at 947 (quoting *Draheim*, 958 F.3d at 657).

B

We agree with the panel opinion in *Rivera-Paredes* and with the Seventh Circuit in *Cervantes*. Simplified, § 4C1.1(a)(10) says that a defendant is eligible for the reduction if he "does not have *X and* did not do *Y*." The plain language and grammatical structure of the provision set out two separate requirements. To use an everyday example, this is not a provision stating "You must not drink and drive," but a provision stating "You must not drink *and* must not drive." The "and" connects several provisions that all must be met. *Cf. Draheim*, 958 F.3d at 657 ("Generally, the joinder of two clauses with the word 'and,' not 'or,' means that the legislature intended that a potential candidate for statutory relief fulfill both clauses, not just one."); *Pulsifer v. United States*, 601 U.S. 124, 140 (2024) (noting that if a provision was read as "requir[ing] the defendant not to have A, *and* not to have B, *and* not to have C," he must not have "each of the three" (emphasis added)). Thus, to "meet[]" the § 4C1.1(a) criteria and prove that he is eligible for the reduction, the defendant must show *both* that he does not have *X and* did not do *Y*. *See* USSG § 4C1.1(a); *United States v. Flanagan*, 80 F.3d 143, 146 (5th Cir. 1996) ("[A]s a general rule, the party seeking the adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment.").

This analysis demonstrates that Morales's argument that subsection (10) should be treated as a single *disqualification* criterion is misplaced. As the Seventh Circuit observed, § 4C1.1(a) does not set out things that the government must show or that the district court must find in order to

disqualify Morales from receiving the reduction. It sets out requirements that Morales must meet to qualify for the reduction. *See Cervantes*, 109 F.4th at 947; *cf. United States v. Bazel*, 80 F.3d 1140, 1143 (6th Cir. 1996) (interpreting a near-identical provision of the safety-valve statute and concluding that an argument like Morales's "would be correct if [18 U.S.C.] § 3553(f) or [USSG] § 5C1.2 were phrased in terms of what the government would have to prove *was* true of the defendant, but . . . the statute is phrased in terms of what the defendant must show *was not* true of him"). Accordingly, to receive the zero-point-offender reduction, a defendant must show *both* that he did not receive a § 3B1.1 adjustment *and* that he was not engaged in a continuing criminal enterprise. The failure to meet either one of those requirements precludes relief.

## C

This interpretation is also consistent with the other use of "and" within § 4C1.1(a). The Supreme Court has expressed some doubt as to whether the presumption of consistent usage properly applies "to words as ubiquitous and . . . sometimes context-dependent as 'and' or 'or.'" *See Pulsifer*, 601 U.S. at 149. However, to the extent that the presumption does apply here, it supports the government's interpretation, not Morales's. Section 4C1.1(a) sets out ten subsections, each phrased as a negative, joined by an "and" at the end of subsection (9), before subsection (10). *See* USSG § 4C1.1(a). Morales acknowledges that he "must meet each of the requirements of subsections (1) through (10)." Thus, he recognizes that in this context, "where the word 'and' conjoins several negative phrases, each negative phrase is a separate requirement." *Cervantes*, 109 F.4th at 946. The consistent usage within § 4C1.1(a) is that "and" connects items that must each be met for the defendant to qualify for the reduction. *See Pulsifer*, 601 U.S. at 150 (concluding that it was consistent to interpret the word "and" at the end of two different lists as setting up two "eligibility checklist[s]");

*Bazel*, 80 F.3d at 1144 ("To be consistent, [the defendant] cannot argue that he must meet all the requirements in each of the subsections of § 3553(f)(1)–(5), but that he does not have to meet the separate requirements of the two portions of § 3553(f)(4) separated by the word 'and.'").

D

We also conclude that this natural reading does not change just because the word "and" is used to join two items within a single numbered subsection. Morales contends that subsection (10) should be treated as a single criterion by pointing to the use of the conjunctive "and" instead of the disjunctive "or," in contrast to other subsections. He notes the lack of a semicolon or comma between the two provisions and the provisions' placement in the same subsection. He also asserts that this list structure is consistent with the Senate's legislative drafting manual. None of these arguments are persuasive.

First, the use of "and" instead of "or" in subsection (10) is not dispositive here. Because the "and" in § 4C1.1(a)(10) connects two negative principles, it functions in the same way that "or" does in other subsections. To illustrate, take subsection (3), which requires that "the defendant did not use violence or credible threats of violence in connection with the offense." USSG § 4C1.1(a)(3). Morales correctly concludes that the "or" in this subsection means that "a defendant must not have committed any of the two acts outlined." That is, committing either of the two acts will disqualify a defendant. Or to frame it in the negative, to satisfy subsection (3), a defendant must not have used violence *and* must not have used credible threats. Simply put, a requirement that a defendant "must not do *X or Y*" has the same results as a requirement that a defendant "must not do *X and* must not do *Y*."

Second, this inverse framing also illustrates that it is not necessary for each separate eligibility criterion to be placed in a separate subsection[5] or separated by additional punctuation. Each subsection using "or" essentially contains two separate criteria, both of which must be met for a defendant to fulfill that subsection's requirements. The same is true for subsection (10). Third, we disagree with Morales's argument that the last item in a list cannot itself contain multiple requirements.[6]

E

Finally, our interpretation of § 4C1.1(a)(10) is consistent with our interpretation of a near-identical provision in the safety-valve statute. That statute provides that, for certain drug offenses:

> [T]he court shall impose a sentence . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . . that—
>
>     . . .

---

[5] Nevertheless, we also note that after briefing in this case was completed, § 4C1.1(a) was amended in the exact way that Morales contends is necessary to indicate that the criteria are independently disqualifying. *See* USSG § 4C1.1 (Nov. 2024) (providing the two-point reduction if "(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and (11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848"); USSG Supp. to App. C, Amendment 831, at 287–88 (Nov. 2024) (explaining that the amendment "makes technical changes" to "clarify the Commission's intention that a defendant is ineligible for the adjustment if the defendant meets either of the disqualifying conditions in the provision"). However, courts considering § 3582(c)(2) motions "substitute only the amendments listed . . . for the corresponding guideline provisions that were applied when the defendant was sentenced," and Amendment 821 uses the original language of § 4C1.1(a)(10). *See* USSG § 1B1.10(b)(1), (d) (Nov. 2023); USSG Supp. to App. C, Amendment 821, Part B, Subpart 1, at 236–37 (Nov. 2023).

[6] Because we conclude that the text of § 4C1.1(a)(10) is sufficiently clear, we do not reach either Morales's or the government's arguments about whether their respective interpretations would create absurd results.

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act . . . .

18 U.S.C. § 3553(f)(4); *see also* USSG § 5C1.2(4).

Although we have not squarely considered Morales's argument in the safety-valve context, we have consistently held that a § 3B1.1 enhancement alone is sufficient to preclude safety-valve relief. *See, e.g.*, *Flanagan*, 80 F.3d at 147 ("[T]o be eligible for the safety valve provision, a defendant may not be a leader or organizer as defined by U.S.S.G. § 3B1.1."); *United States v. Guzman-Reyes*, 113 F. App'x 607, 609 (5th Cir. 2004), *vacated on other grounds*, 125 S. Ct. 1407 (2005); *United States v. Cuellar*, 407 F. App'x 798, 801 (5th Cir. 2011); *United States v. Ramos*, 772 F. App'x 47, 50 & n.7 (5th Cir. 2019); *see also Bazel*, 80 F.3d at 1142; *Draheim*, 958 F.3d at 658. We decline to adopt a different interpretation for the zero-point-offender provision.

IV

In conclusion, we hold that to be eligible for the zero-point-offender reduction, a defendant must show *both* that he did not receive an enhancement under § 3B1.1 *and* that he was not engaged in a continuing criminal enterprise. If a defendant either received a § 3B1.1 enhancement or engaged in a continuing criminal enterprise, he is disqualified from receiving the reduction. The district court did not err in its interpretation of § 4C1.1(a)(10) or in its denial of Morales's § 3582(c)(2) motion, and its judgment is AFFIRMED.